UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                              Plaintiff,<br><br>v.<br><br>RIGOBERTO CAMPOS-ATRISCO,<br><br>                              Defendant. | Case No.:  3:19-mj-24683-KSC<br><br>**ORDER:**<br><br>**(1) DENYING DEFENDANT'S MOTION TO DISMISS THE COMPLAINT;**<br><br>**(2) DENYING DEFENDANT'S MOTION TO EMPANEL A JURY;**<br><br>**(3) DENYING DEFENDANT'S MOTION TO SUPPRESS STATEMENTS; and**<br><br>**(4) DENYING WITHOUT PREJUDICE DEFENDANT'S MOTION TO COMPEL DISCOVERY**<br><br>**[Doc. No. 28]** |

   Before the Court are defendant Rigoberto Campos-Atrisco's Motions to: (1) Dismiss the Complaint; (2) Empanel a Jury; (3) Suppress Statements; and (4) Compel Discovery (collectively, the "Motions" or "Mot.").  Doc. No. 28.  The United States opposes these Motions (the "Opposition" or "Opp").  Doc. No. 29.  For the reasons set forth below, the

Court **DENIES** defendant's Motions to Dismiss, to Empanel a Jury, and to Suppress Statements, and **DENIES WITHOUT PREJUDICE** defendant's Motion to Compel Discovery.

## I.  BACKGROUND

Defendant is charged with violating 8 U.S.C. § 1325(a)(1), which provides, in relevant part, that "[a]ny alien who (1) enters or attempts to enter the United States at any time or place other than as designated by immigration officers" is guilty of a misdemeanor. *See* Doc. No. 1.  The United States alleges that on December 18, 2019, a United States Customs and Border Protection ("Border Patrol") agent encountered defendant attempting to hide behind boulders in an area located approximately two miles north of the United States/Mexico International Boundary and approximately 12 miles east of the Tecate, California Port of Entry. *Id.* at 2.  The United States further alleges that the Border Patrol agent approached defendant, identified himself as a Border Patrol agent, and conducted an immigration inspection. *Id.*  Defendant told the agent he is a citizen of Mexico and did not have documentation permitting him to enter or remain in the United States, and was placed under arrest. *Id.*  Defendant appeared in Court on December 19, 2019 and was arraigned on a Complaint charging him with a single misdemeanor count of improper attempted entry by an alien in violation of 8 U.S.C. § 1325(a)(1).  Doc. No. 4.  Defendant was released on bond on January 7, 2020.  Doc. Nos. 12, 14.  On July 7, 2020, defendant filed the instant Motions.  On July 15, 2020, the United States filed its Opposition.

## II. DEFENDANT'S MOTION TO DISMISS THE COMPLAINT

Defendant proffers five reasons to dismiss the Complaint: (A) Congress violated the non-delegation doctrine when it enacted § 1325(a)(1); (B) § 1325(a)(1) is impermissibly vague in violation of the Due Process Clause; (C) defendant's prosecution under § 1325(a)(1) deprives him of his rights to equal protection and due process; (D) Section 1325(a)(1) violates the Due Process Clause; and (E) the Complaint fails to allege the necessary elements of a § 1325(a)(1) claim. *See* Mot. at 2-5.  The Court finds that none of defendant's arguments provides a basis for dismissal.

## A. Section 1325(a)(1) Does Not Violate the Non-Delegation Doctrine

First, defendant contends that § 1325(a)(1) violates the non-delegation doctrine because it permits certain executive branch officials the discretion to determine what constitutes a crime under § 1325(a)(1), by supposedly allowing immigration officers, including Border Patrol agents, the ability to designate places for entry for purposes of immigration law.  Mot. at 2.  Defendant claims this delegation is improper because Congress failed to provide "an intelligible principle" to guide and constrain that exercise of discretion.  *Id.* (internal quotation marks and citations omitted).  As the United States correctly points out, this Court "has already analyzed this claim and rejected it."  Opp. at 3 (citing *United States v. Velazquez-Hernandez*, No. 19-cr-03066-KSC, 2020 WL 475272 (S.D. Cal. Jan. 28, 2020)).

Article 1, section 1 of the United States Constitution provides that "[a]ll legislative powers herein granted shall be vested in a Congress of the United States."  "Accompanying that assignment of power to Congress is a bar on its further delegation."  *Gundy v. United States*, 139 S. Ct. 2116, 2123 (2019).  "Congress … may not delegate 'powers which are strictly and exclusively legislative.'"  *Id.* (quoting *Wayman v. Southard*, 23 U.S. 1 (10 Wheat.), 42-43 (1825)).  "But the Constitution does not 'deny[ ] to the Congress the necessary resources of flexibility and practicality [that enable it] to perform its function[s].'"  *Id.* (quoting *Yakus v. United States*, 321 U.S. 414, 425 (1944)).  Congress may, however, "obtain the assistance of its coordinate Branches" and "may confer substantial discretion on executive agencies to implement and enforce the laws."  *Id.* (citing *Mistretta v. United States*, 488 U.S. 361, 372 (1989)).

The standards to show a permissible delegation "are not demanding."  *Id.* at 2129.  Moreover, as the Supreme Court explained in *Gundy*, a finding that a Congressional delegation is "excessive" is exceedingly rare.  *Id.*  Indeed, the Supreme Court has "[o]nly twice in this country's history (and that in a single year)" found a delegation excessive and "in each case only because 'Congress had failed to articulate *any* policy or standard' to confine discretion."  *Id.* (citations omitted).

The Court finds that the Supreme Court's analysis in *Gundy* undermines defendant's argument that Congress has improperly delegated the authority to criminalize entry by allowing "any immigration officer, including a Border Patrol agent."  *See* Mot. at 2.  At issue in *Gundy* was Congress' delegation of authority to the Attorney General to determine when to require sex offenders who were convicted before the enactment of the Sex Offender Registration and Notification Act to register.  *Gundy*, 139 S. Ct. at 2121.  Congress had determined that the registration requirements applied to certain offenders, but left the practical problems associated with implementation and the timing of offender registration to the Attorney General.  *See id.* at 2129-30.  The Supreme Court upheld the delegation, finding it "easily passe[d] constitutional muster."  *Id.* at 2121.

Similarly here, Congress determined that there should be a proper location and procedure for an alien to seek admission to the United States.  *See* 8 U.S.C. § 1225(a)(3) (requiring all applicants for admission to be inspected by immigration officers).  Specifically, Congress requires that aliens seeking lawful entrance to the United States do so at a port of entry.  *See United States v. Corrales-Vasquez*, 931 F.3d 944, 946 (9th Cir. 2019); *United States v. Aldana*, 878 F.3d 877, 882 (9th Cir. 2017).  The details of where and when the ports of entry would be located was left to the executive agency responsible for staffing the facilities.  *See Velazquez-Hernandez*, 2020 WL 475272, at *2.  Yet, contrary to defendant's contention that "any immigration official" can designate a port of entry, only the Secretary of Homeland Security may designate (or de-designate) ports of entry, subject to the Administrative Procedures Act.  *See* 8 C.F.R. § 100.4(a).  Ports of entry necessarily include facilities, staffed by immigration officials that are set up to accept applications for admission.  *Aldana*, 878 F.3d at 882.  Congress also established penalties for failing to follow those procedures, including § 1325(a)(1).  *See* 8 U.S.C. §§ 1321-1330.  Further, Congress properly delegated the authority to implement § 1325(a)(1) to the Executive Branch, the agency that would be responsible for staffing and operating the designated ports of entry.

/ /

1    The Court does not find that this delegation falls outside of constitutional bounds.
2    Defendant's contrary interpretation of § 1325(a)(1) is in direct conflict with Congress's
3    clear statutory scheme.  The Court therefore concludes that § 1325(a)(1) does not violate
4    the non-delegation doctrine, and defendant's Motion to Dismiss on this basis is DENIED.

5    **B. Section 1325(a)(1) Is Not Impermissibly Vague**

6            Defendant next argues that the Court "must dismiss this case because § 1325(a)(1)
7    is impermissibly vague, in violation of the Due Process Clause.  Mot. at 2-3.  Defendant
8    correctly recognizes that a statute can be unconstitutionally vague if: (1) "it fails to provide
9    people of ordinary intelligence a reasonable opportunity to understand what conduct it
10   prohibits" or (2) "it authorizes or even encourages arbitrary and discriminatory
11   enforcement."  *Hill v. Colorado*, 530 U.S. 703, 732 (2000).  Without analysis, defendant
12   claims that § 1325(a)(1) "flunks" both tests.  Mot. at 2.

13           The Court disagrees.  As to the first test, it is clear what § 1325(a)(1) prohibits:
14   § 1325(a)(1) makes it a "crime to enter the United States without submitting to examination
15   or inspection" and "covers conduct occurring at any time or place other than 'a designated
16   port of entry when it is open for inspection.'"  *Corrales-Vasquez*, 931 F.3d at 953.  A
17   person of ordinary intelligence should be able to determine what conduct the statute
18   prohibits.  Defendant does not seriously argue otherwise.

19           As to the second test, defendant acknowledges his argument that §1325(a)(1)
20   authorizes arbitrary enforcement is premised on the same incorrect interpretation of the
21   statute that the Court has just rejected.  *See* Mot. at 2.  As explained above, §1325(a)(1)
22   does not "allow[] an immigration officer to decide what places and times to designate for
23   entry. . . for any reason or no reason at all."  *Id.* at 2-3.  Rather, formal procedures are in
24   place to designate ports of entry and Congress determined that a port of entry is the only
25   place an alien may lawfully seek admission.  Defendant's interpretation is not supported
26   by § 1325's text or by precedent.  Accordingly, the Court finds that §1325(a)(1) is not
27   impermissibly vague, and defendant's Motion to Dismiss on this basis is DENIED.

28   / /

**C. Defendant's Prosecution Does Not Violate Equal Protection or Due Process**

As a third basis for dismissal, defendant asserts that his prosecution violates his constitutional rights to equal protection and due process.  Mot. at 3.  The Court disagrees.

### 1. Equal Protection

The Court first addresses defendant's equal protection claim.  Defendant observes that whereas other misdemeanor offenders are prosecuted through the Central Violations Bureau ("CVB") Court, where they are "generally cited and released," defendants charged with a misdemeanor offense under § 1325(a)(1) "always serve some jail time—even though [such] defendants have a *lower* failure-to-appear rate than CVB defendants."  Mot. at 3.  According to defendant, this amounts to unconstitutional "disparate treatment" based on "alienage, national origin and race." *Id.*

Section 1325(a)(1) "prohibits '[a]ny alien' from 'enter[ing] or attempt[ing] to enter the United States at any time or place other than as designated by immigration officers.'" *United States v. Gonzalez-Pena*, 455 F. Supp. 3d 1021, 1027 (S.D. Cal. 2020).  Accordingly, § 1325(a)(1) does not create a suspect classification, but rather, creates a classification based upon specific criminal action: "'enter[ing] or attempt[ing] to enter the United States at any time or place other than as designated by immigration officers.'" *Velazquez-Hernandez*, 2020 WL 475272, at *8 (citing *United States v. Mendoza-Hinojosa*, No. 00-50327, 2000 U.S. App. LEXIS 8068, at *7 (9th Cir. Apr. 20, 2000)); *see also Plyler v. Doe*, 457 U.S. 202, 223 ("Undocumented aliens cannot be treated as a suspect class because their presence in this country in violation of federal law is not a 'constitutional irrelevancy.'") (citation omitted).  Simply put, the prosecution of § 1325 matters in District Court is "charge based, not nationality based." *Unites States v. Chavez-Diaz*, No. 18-mj-20098-AJB, 2018 WL 9543024, at *3 (S.D. Cal. Oct. 30, 2018), *rev'd on other grounds*, 949 F.3d 1202 (9th Cir. 2020).

Moreover, non-suspect classifications are "'presumed constitutional'" unless the party challenging the statute "'negate[s] every conceivable basis which might support it.'" *Allied Concrete & Supply Co. v. Baker*, 904 F.3d 1053, 1060 (9th Cir. 2018) (quoting

*Armour v. City of Indianapolis*, 566 U.S. 673, 681 (2012)).  Defendant has failed to carry this burden.  His assertion of disparate treatment is based solely on the mistaken assumption that "misdemeanors are misdemeanors." *Chavez-Diaz*, 2018 WL 9543024, at *3.  As this Court and others in this District have made clear, that "is not the point." *Id.*; *see also Velazquez-Hernandez*, 2020 WL 475272, at *9.  "The jurisdictional underpinnings of the basis for the charges, the manner of 'arrest' and prosecutorial discretion are all factors" in determining where prosecution is appropriate. *Id.*  In this District, "[c]ases prosecuted in the CVB Court are predicated on a violation of law on federal property." *United States v. Mouret-Romero*, No. 18MJ228929-WQH, 2019 WL 1166951, at *2 (S.D. Cal. Mar. 13, 2019).  There are no facts in the record to suggest that defendant's offense occurred on federal property, and thus his prosecution for violating § 1325(a)(1) "do[es] not have this same jurisdictional underpinning." *Id.*

The Court likewise rejects defendant's alternative thesis that the Government's decision to prosecute § 1325 defendants "in 'regular' court" rather than in the CVB court demonstrates that the statute is enforced and prosecuted for a discriminatory reason or to discriminatory effect. Mot. at 3.  To state an equal protection claim based on the selective enforcement of a law, defendant must make a showing that "'the law is applied in a discriminatory manner or imposes different burdens on different classes of people.'" *Lazy Y Ranch LTD v. Behrens*, 546 F.3d 580, 589 (9th Cir. 2008) (quoting *Freeman v. City of Santa Ana*, 68 F.3d 1180, 1187 (9th Cir. 1995)).  A claim for selective prosecution requires a defendant to show that "others similarly situated have not been prosecuted and that the allegedly discriminatory prosecution of the defendant was based on an impermissible motive." *United States v. Culliton*, 328 F.3d 1074, 1081 (9th Cir. 2003) (citations omitted). The evidence in support of such a claim must be "viewed in the light most favorable to the government." *Id.*

Defendant has not made the requisite showing for either claim. *See United States v. Chavez-Diaz*, 2018 WL 9543024, at *4 (rejecting identical argument and finding that "[t]he 'processing' of defendant's case by charge is not discriminatory, and defendant has not

proven otherwise"). Defendant's conclusory allegations are unsubstantiated, and there is nothing in the record that supports his assertion that he was treated differently based upon any impermissible motive. Indeed, as many courts in this District have noted, prosecuting § 1325(a)(1) offenses in the District Court "conserves judicial resources" and makes "organizational sense." *See United States v. Reyes-Pinzon*, No. 19-mj-24308-RNB-H, 2020 WL 2542640, at *3 (S.D. Cal. May 19, 2020) (collecting cases). Therefore, the Court finds that defendant's prosecution does not deprive him of his right to equal protection.

### 2. *Due Process*

The Court is also unpersuaded by defendant's argument that the United States' failure to prosecute him in CVB Court violates his "procedural and substantive due process" rights. Mot. at 3. The Ninth Circuit has set forth a two-part test for a procedural due process claim which requires defendant to plausibly demonstrate "(1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections."[1] *Franceschi v. Yee*, 887 F.3d 927, 935 (9th Cir. 2018). Defendant's conclusory statement that his procedural due process rights have been violated is woefully deficient. Defendant's proceedings were conducted in accordance with the Federal Rules of Criminal Procedure, and he does not contend that any aspect of his criminal proceedings violated these rules. As a result, defendant's generalized prosecutorial due process claim fails.

Defendant separately argues that his substantive due process rights have been violated because it "shocks the conscience" for the United States to deprive § 1325(a)(1) defendants of the "substantial benefits" of the CVB Court while extending those benefits to "other defendants charged with petty offenses who have an even greater risk of flight." Mot.at 4. Here again, however, defendant merely incants the phrase "shocks the

---

[1] The Ninth Circuit describes this test as "congruent with the three-part procedural due process test established by the Supreme Court" in *Mathews v. Eldridge*, 424 U.S. 319 (1976), cited by defendant. *Franceschi*, 887 F.3d at 935; *see also* Mot. at 3-4 (citing *Mathews*).

conscience" without pointing to anything in the record that would support a finding that the Government's prosecution was "egregious" or "outrageous," as is his burden to do. *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998).

The "'shock the conscience'" standard sets an extremely "high hurdle" to establish a substantive due process violation. *Ms. L. v. U.S. Immigration & Customs Enf't*, 302 F. Supp. 3d 1149, 1166 (S.D. Cal. 2018) (quoting *Aguilar v. U.S. Immigration & Customs Enf't Div. of Dep't of Homeland Sec.*, 510 F.3d 1, 21 (1st Cir. 2007)). The Court finds that a prosecution for violation of § 1325(a)(1) in the District Court rather than in the CVB Court falls well short of it. As the record shows, following his arrest, defendant appeared within hours before a U.S. Magistrate Judge, was appointed counsel, and had all other rights afforded. *See*, *e.g.*, Doc. Nos. 4, 5, 6. Defendant was allowed to plead to the offense, satisfied the conditions of bond, and was released. *See* Doc. Nos. 10, 12, 14. And he is exercising his right to proceed to trial. "None of these procedures shocks the conscience." *See United States v. Lazcano-Neria*, No. 3:20-mj-04538-AHG, 2020 WL 6363685, at *5 (S.D. Cal. Oct. 29, 2020) (rejecting identical argument). Consequently, defendant's substantive due process claim fails.

For the foregoing reasons, the Court finds defendant's prosecution in this Court does not violate his right to procedural and substantive due process and DENIES the Motion to Dismiss on this basis.

**D. Section 1325(a)(1) Does Not Violate the Due Process Clause**

Defendant moves to dismiss the Complaint on the basis that § 1325(a)(1) employs an unconstitutional definition of the term "alien." Mot. at 4. Specifically, defendant argues that § 1325(a)(1) is unconstitutional because "it favors unwed mothers over unwed fathers," citing the Supreme Court's decision in *Sessions v. Morales-Santana*, 137 S. Ct. 1678 (2017). *Id.*

In *Morales-Santana*, the Supreme Court addressed the constitutionality of certain provisions of the Immigration and National Act ("INA") governing the acquisition of U.S. Citizenship by a child born abroad to unwed U.S. citizens. *Id*. The Supreme Court held

that these provisions—which applied differently based on the parent's gender—violated the equal protection principle implicit in the Fifth Amendment's Due Process Clause. *Id*. The Supreme Court did not address other provisions of the INA, including § 1325.

Defendant has not shown how the Supreme Court's narrow holding in *Morales-Santana* is applicable to his case. Defendant does not claim he is entitled to derivative citizenship, and there is no evidence in the record indicating that either of the defendant's parents are U.S. citizens. Furthermore, defendant's argument has already been rejected by the Ninth Circuit in an unpublished decision. *See United States v. Madero-Diaz*, 752 F. App'x 537, 2019 WL 625678 (9th Cir. Feb. 14, 2019).

Accordingly, the Court finds §1325(a)(1) does not violate the Due Process Clause and DENIES the Motion to Dismiss on this basis.

**E. Section 1325(a)(1) Is Sufficiently Charged in the Complaint**

Finally, defendant moves to dismiss the Complaint on the basis that it fails to allege necessary elements of a violation of § 1325(a)(1). *See* Mot. at 4-5. Defendant argues that the Complaint is "deficient" because it "fails to contain the implied *mens rea* for the attempt portion" of § 1325(a)(1), namely, that he had: (1) "'the specific intent to enter the country free from official restraint," and (2) "knowledge of [his] alienage" (*i.e*., that he knew he was not a United States citizen) when he attempted to enter the country. *Id*. According to defendant, these are "fatal flaw[s]" in the charging document and require dismissal. *Id*. at 4.

Defendant correctly states that a charging document "must include the 'essential facts constituting the offense charged.'" *Id*. (quoting Fed. R. Crim. Proc. 7(c)(1)). A charging document "that tracks the words of the statute violated is generally sufficient" to allege the elements of an offense, but "implied necessary elements, not present in the statutory language" must be included. *United States v. Jackson*, 72 F.3d 1370, 1380 (9th Cir. 1995) (internal citations omitted).

/ /

/ /

10

However, the Court rejects defendant's assertion that the charging document is "deficient" because it does not explicitly allege the specific intent element of the charged offense. Mot. at 5. The Supreme Court addressed a similar challenge to a charge of "attempted" reentry into the United States of America under 8 U.S.C. § 1326(a) in *United States v. Resendiz-Ponce*, 549 U.S. 102, 104 (2007). The *Resendiz-Ponce* Court began by reiterating the two constitutional requirements for an indictment: (1) that it "contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend"; and (2) that it "enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Id.* (quoting *Hamling v. United States*, 418 U.S. 87, 117 (1974)). The Supreme Court held that the use of the word "attempt" in the defendant's charging document satisfied both "the overt act and intent elements" and provided adequate notice. *Id.* at 107.

Similarly, in this case, the Complaint's charge that defendant "knowingly and intentionally attempted to enter" the country "at a time and place other than as designated by immigration officers" sufficiently encompasses the intent element that defendant alleges is missing. *See Reyes-Pinzon*, 2020 WL 2542640, at *7. And, as the Government correctly notes, in unpublished decisions that follow *Resendiz-Ponce*, the Ninth Circuit has found that the use of the word "attempt" or the phrase "attempt to" in a charging document adequately puts a defendant on notice of the intent component of a charged offense. Opp. at 5-6 (citing *United States v. Devore*, 771 F. App'x 427, 428 (9th Cir. 2019); *United States v. Elk-Booth*, 481 F. App'x 326, 326-27 (9th Cir. 2012)). Accordingly, the Court finds the Complaint adequately alleges the element of defendant's intent.

The Court is also unpersuaded by defendant's argument that the Complaint is deficient because it does not allege his "knowledge of alienage." Mot. at 5. (citing *Rehaif v. United States*, 139 S. Ct. 2191, 2195-97 (2019)). In *Rehaif*, the Supreme Court held that "in a prosecution under 18 U.S.C. § 922(g) and § 924(a)(2), the Government must prove both that the defendant knew he possessed a firearm and that he knew he belonged to the relevant category of persons barred from possessing a firearm." 139 S. Ct. at 2200. This

holding was based on the text of § 924(a)(2)'s use of the term "knowingly," which the Supreme Court noted was "normally … read as applying to all the subsequent elements of the crime." *See id.* at 2195-97 (citations omitted).  In contrast, here, defendant is charged with violating §1325(a)(1), which does not contain the term "knowingly."  *See* 18 U.S.C. § 1325(a).  Thus, "the rationale in *Rehaif* is not directly applicable to a prosecution under § 1325 and does not require the Government to allege or prove that defendant knew he was an alien."  *United States v. Nunez-Soberanis*, 406 F. Supp. 3d 835, 843 (S.D. Cal. 2019).

For these reasons, the Court finds the Complaint does not fail to allege essential facts constituting the offense charged, and defendant's Motion to Dismiss on this basis is DENIED.

## III.   DEFENDANT'S REQUEST FOR A JURY TRIAL

In the alternative to dismissal, defendant moves the Court to "empanel a jury to adjudicate the case."  Mot. at 5.  In support, defendant argues the offense for which he is charged – a misdemeanor violation of § 1325(a)(1) – is a "serious offense" warranting a jury trial because a conviction would "substantially impair" his ability to seek asylum, and thus, would result in defendant's removal.  *Id.*  The United States responds that defendant's request for a jury trial should be denied because the offense for which defendant is charged has a "maximum sentence of six months" and does not provide for automatic "deportation as a consequence of conviction."  Opp. at 8.

Although a criminal defendant is entitled to a jury trial "where imprisonment for more than six months is authorized," *Baldwin v. New York*, 399 U.S. 66, 69 (1970), "there is a category of petty crimes or offenses which is not subject to the Sixth Amendment jury trial provision." *Duncan v. Louisiana*, 391 U.S. 145, 159 (1968).  "An offense carrying a maximum prison term of six months or less is presumed petty." *Lewis v. United States*, 518 U.S. 322, 325 (1996); *see also United States v. Velasquez-Luna*, 2019 U.S. Dist. LEXIS 15647, at *5 (S.D. Cal. Jan 28, 2019) (holding that a misdemeanor charge for eluding examination in violation of 8 U.S.C. § 1325(a)(2) is considered a petty offense not subject to the Sixth Amendment jury trial provision).

1
2
3
4
5
6
7
8
9

Similarly, here, the Court finds the offense for which defendant is charged is a petty offense not subject to the jury trial provisions of the Sixth Amendment.  Moreover, as the United States correctly points out, "[t]he possibility of deportation cannot 'convert [a] border-crossing misdemeanor into a 'serious offense' for which the Sixth Amendment requires a trial by jury.'"  *United States v. Ramirez-Ortiz*, 370 F. Supp. 3d 1151, 1157 (S.D. Cal. 2019), *rev'd on other grounds by* 931 F.3d 944 (9th Cir. 2019) (quoting *United States v. Rodriguez-Rodriguez*, 742 F.2d 1194, 1195 (9th Cir. 1984)).  Deportation therefore is "not a penalty authorized as a consequence of a conviction."  *See United States v. Mazariegos-Ramirez*, 2019 U.S. Dist. LEXIS 15701, at *6 (S.D. Cal. Jan 28, 2019).

10

Accordingly, the Court DENIES defendant's request to empanel a jury for his trial.

11

## IV.   DEFENDANT'S MOTION TO SUPPRESS STATEMENTS

12
13
14
15
16
17
18
19
20
21

Defendant moves separately to suppress statements obtained by the arresting Border Patrol agent in the field at the time of defendant's arrest.  *See* Mot. at 6-10.  Defendant argues that the questions asked by the agent prior to giving defendant a *Miranda* advisal, including, but not limited to, questions regarding defendant's country of citizenship, "must" be suppressed.  *Id*. at 10.  Defendant further contends that these statements must also be "suppressed as involuntary" because of the "intimidating" circumstances surrounding this encounter.  *Id*. at 11.  The United States opposes, stating that the admissions defendant provided to the arresting Border Patrol agent are admissible because the encounter was a standard *Terry* stop near the border, which the Ninth Circuit has "repeatedly" found to be a proper non-custodial detention.  Opp. at 9-11 (citations omitted).

22
23
24
25
26
27
28

The Court agrees with the United States.  The Fifth Amendment provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself . . . ."  U.S. Const. Amend. V.  The privilege against compelled self-incrimination requires that law enforcement agents give *Miranda* warnings to an accused person prior to a custodial interrogation.  *Miranda v. Arizona*, 384 U.S. 436, 444 (1966).  Importantly, however, field questioning of a person near the border has long been recognized as a non-custodial *Terry* stop that does not trigger the *Miranda* warnings requirement.  *United States v. Galindo-*

13

*Gallegos*, 244 F.3d 728, 732 (9th Cir. 2001). The Ninth Circuit holds that "when [B]order [P]atrol agents stop a car based on reasonable suspicion that individuals are illegally present . . . and question the occupants regarding their citizenship and immigration status, the occupants are not in custody for *Miranda* purposes." *United States v. Medina-Villa*, 567 F.3d 507, 520 (9th Cir. 2009). If a detention does not exceed the "bounds of a *Terry* stop and the questions [are] 'reasonably related in scope to the justification of their initiation,' . . . admissions should not be suppressed." *Galindo-Gallegos*, 244 F.3d at 735 (Paez, J., concurring) (internal citations omitted).

In this case, defendant's admissions took place in an outdoor area where defendant was briefly detained and questioned about his "country of citizenship." Mot. at 10; *see also* Doc. No. 1 at 2. According to the United States, when defendant was encountered by the arresting Border Patrol agent, he was "hiding, wearing booties covering his tracks, in a rural, rugged area, about 2 miles away from the border," and thus, a temporary detention at that point "was appropriate to 'ask[] questions reasonably related to [defendant's] immigration status.'" Opp. at 10-11 (quoting *United States v. Arce-Rodriguez*, 697 F. App'x 497, 498 (9th Cir. 2017)). The United States also asserts that the agent neither threatened defendant nor attempted to force him to speak when asking "standard immigration questions." *Id*. at 11-12. Defendant has not produced any material facts to the contrary to support his claim that the statements he made during this encounter were in any way involuntary.

Therefore, consistent with well-established Ninth Circuit authority, the Court finds that defendant was not in custody for *Miranda* purposes when he was initially asked standard immigration questions. *See*, *e.g.*, *Medina-Villa*, 567 F.3d at 520 (finding a defendant was not in custody for *Miranda* purposes even though the Border Patrol agent prevented the defendant from leaving and interrogated him about his immigration status); *see also*, *e.g.*, *United States v. Cervantes-Flores*, 421 F.3d 825, 830 (9th Cir. 2005) (holding that handcuffing a defendant while asking field questions about his citizenship and immigration status did not convert the *Terry* stop into a custodial arrest). The Court thus

1  finds that defendant's admissions to the Border Patrol agent are admissible.  For these

2  reasons, defendant's Motion to Suppress Statements is DENIED.

3  ## V. DEFENDANT'S MOTION TO COMPEL DISCOVERY

4  Defendant moves separately to compel the United States to disclose ten categories

5  of information and materials related to this criminal case.  Mot.at 11-15.  The United States

6  responds that it has already addressed most of defendant's discovery requests and will

7  promptly notify defendant if additional discovery becomes available.  Opp. at 12-13.

8  Federal Rule of Criminal Procedure 16 grants a criminal defendant the right "to

9  inspect all documents, data, or tangible items within the "[G]overnment's 'possession,

10  custody, or control' that are "material to preparing the defense." *United States v. Budziak*,

11  697 F.3d 1105, 1111 (9th Cir. 2012) (citing Fed. R. Crim. Proc. 16(a)(1)(E)).  To obtain

12  discovery under Rule 16, a criminal defendant "must make a *prima facie* showing of

13  materiality."  *United States v. Mandel*, 914 F.2d 1215, 1219 (9th Cir. 1990) (internal

14  citations omitted).  Evidence is "material" if it is "'relevant to the development of a possible

15  defense.'"  *Id.* (quoting *United States v. Clegg*, 740 F.2d 16, 18 (9th Cir. 1984)).

16  In addition to its statutory duty to disclose material evidence pursuant to Rule 16,

17  the United States has a constitutional duty to disclose, upon request, all evidence favorable

18  to a defendant that is "material either to guilt or to punishment." *Brady v. Maryland*, 373

19  U.S. 83, 87 (1963).  This constitutional duty also extends to information that bears on a

20  witness's credibility "[w]hen the reliability of [that] witness may well be determinative of

21  guilt or innocence." *Giglio v. United States*, 405 U.S. 150, 154 (1972).  Accordingly, the

22  United States must "examine the personnel files of its law enforcement officer witnesses"

23  and "turn over any information about its witnesses that could hast doubt upon their

24  credibility." *United States v. Jennings*, 960 F.2d 1488, 1491 (9th Cir. 1992); *see also*

25  *United States v. Henthorn*, 931 F.2d 29, 30 (9th Cir. 1991) (holding "impeachment material

26  contained in [a] testifying officers' personnel files" to be discoverable).

27  Finally, under the Jencks Act, where a witness testifies at trial for the Government,

28  any pretrial statements by that witness are discoverable – but only after the witness has

taken the stand.  18 U.S.C. § 3500(a); *see also United States v. Taylor*, 802 F.2d 1108, 1118 (9th Cir. 1986) (noting that the Jencks Act "limits compulsory pretrial discovery of statements made by prospective [G]overnment witnesses and makes them unavailable until such witnesses have testified at trial").

The materials that defendant seeks are inarguably within the foregoing parameters. However, defendant has not "present[ed] facts" tending to show that the Government is withholding additional material information, as is his burden.  *Mandel*, 914 F.2d at 1219. The United States represents that it has already produced "reports of the incident" and "aerial images of the general area of apprehension" as well as "audio recordings of dispatch communication, and audio recordings of [d]efendant's jail cell" to defendant.  Opp. at 12-13.  The United States further acknowledges that it will "continue to comply with its discovery obligations," "will provide reasonable notice, as required, of any Rule 404(b) evidence" and will also "meet and confer with defense counsel to attempt to resolve any discovery disputes that arise."  *Id*. at 13.  Therefore, the Court finds it is unnecessary to require further compliance from the United States at this time.  Defendant may renew this Motion if any new facts arise to support it.  For these reasons, the Court DENIES WITHOUT PREJUDICE defendant's Motion to Compel Discovery.

/ /
/ /
/ /
/ /
/ /
/ /
/ /
/ /
/ /
/ /
/ /

3:19-mj-24683-KSC

1

## <u>ORDER</u>

2 For the foregoing reasons, the Court hereby **ORDERS** as follows:

3    1. Defendant's Motion to Dismiss is **DENIED**;

4    2. Defendant's Motion to Empanel a Jury is **DENIED**;

5    3. Defendant's Motion to Suppress Evidence is **DENIED**; and

6    4. Defendant's Motion to Compel Discovery is **DENIED WITHOUT**

7       **PREJUDICE**.

8 **IT IS SO ORDERED.**

9 Dated:  December 7, 2020

10

11                                 Hon. Karen S. Crawford
                                 United States Magistrate Judge

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28