UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA,<br><br>                        Plaintiff,<br><br>v.<br><br>RIGOBERTO CAMPOS-ATRISCO,<br><br>                        Defendant. | Case No.: 3:19-mj-24683-KSC<br><br>**ORDER DENYING DEFENDANT'S SUPPLEMENTAL MOTION TO DISMISS THE COMPLAINT**<br><br>**[Doc. No. 38]** |
|---|---|

Before the Court is the parties' Joint Motion to Incorporate Prior Briefing and [for an] Order from the Court (the "Motion" or "Mot."). Doc. No. 38. Defendant Rigoberto Campos-Atrisco wishes to supplement his previously-filed (and since denied) Motion to Dismiss the Complaint (*See* Doc. Nos. 28, 39) to add an additional basis for dismissal: that his charge for violation of 8 U.S.C. § 1325 should be dismissed "due to the racist origins of the statue [sic]." Mot. at 2 (citing *Village of Arlington Heights v. Metropolitan Housing Dev. Corp.*, 429 U.S. 252 (1977)). The Government does not object to defendant raising this new argument. *See id.* Both parties incorporate by reference their briefing in *United States v. Girarte-Alcala*, Case No. 20-mj-20121-KSC. ("*Girarte-Alcala*"). *Id.* The parties further request that the Court issue an order on defendant's supplemental Motion to

//

Dismiss to preserve the issue for appeal. *Id.* For the reasons that follow, defendant's supplemental Motion to Dismiss is DENIED.

Pursuant to the parties' agreement, the following discussion is based on the arguments raised in defendant's Motion to Dismiss in *Girarte-Alcala* (the "*Girarte-Alcala* MTD") and the Government's opposition thereto (the "*Girarte-Alcala* Opp."). *See* Case No. 20-mj-20121-KSC, Doc. Nos. 32, 33.

## DISCUSSION

### A. *Section 1325(a)(1) Is Not "Presumptively Unconstitutional" Under Village of Arlington Heights v. Metropolitan Housing Dev. Corp.*

Defendant argues the Court should dismiss the Complaint because the attempted illegal entry statute, § 1325(a)(1), is "presumptively unconstitutional" under the Due Process Clause and the Equal Protection Clause, because it was enacted with a discriminatory purpose. *Girarte-Alcala* MTD at 9. In support of this contention, defendant relies on *Village of Arlington Heights*, in which the Supreme Court held that official action violates the Equal Protection Clause if (1) it has a disproportionate impact on racial minorities; and, (2) racial discrimination was a motivating factor in the official action. *Id.* at 265-266. If a challenger can show that a discriminatory purpose was a "motivating factor," the burden shifts to the Government to show that "the same decision would have resulted even had the impermissible purpose not been considered." *Id.* at 270 n.21.

By way of background, defendant cites to transcripts from Congressional hearings and the Congressional Record in the 1920's related to criminalization of illegal entry by aliens as the basis for his contention that racism and eugenics were motivating factors in the passage of the Undesirable Aliens Act of 1929 (UAA), and asserts that the language of this illegal entry law was essentially identical to the current version of Section 1325. *Girarte-Alcala* MTD at 11-18. Although this original illegal entry law has since been re-enacted several times, defendant contends that "later re-enactments do not cleanse the law of its original taint" even if the later statutes serve legitimate purposes. *Id.* at 19, citing *Ramos v. Louisiana*, 140 S. Ct. 1390 (2020), and *Espinoza v. Montana Dep't of Revenue*,

140 S. Ct. 2246 (2020). In sum, defendant's theory is that the attempted illegal entry law is unconstitutional under the Equal Protection Clause because it was enacted with a discriminatory purpose and continues to disparately impact Mexicans and other individuals of Mexican and Latin decent. Therefore, defendant argues the Court should dismiss the charge against him in the Complaint, unless the Government can meet its burden of establishing that the illegal entry statute would have been enacted if the impermissible purpose had not been considered. *Id.* at 20-21.

Defendant's claim that Section 1325(a)(1) is "presumptively unconstitutional" rests almost exclusively on the Supreme Court's opinion in *Arlington Heights*, *supra*, in which the Supreme Court examined a challenge to a local agency's denial of a re-zoning request. *Id.* at 254. The Supreme Court identified four factors to be considered in determining the existence of a discriminatory purpose underlying government action. *Id.* at 266. These factors are: (1) the "impact of the official action" as the starting point; (2) the "historical background" of the decision; (3) the "specific sequence of events leading up to the challenged decision;" and, (4) whether the decision reflects a departure "from the normal procedural [or substantive] sequence." *Id.* at 266–67 (internal citations omitted).

In this case, defendant's analysis of Section 1325(a)(1) under the *Arlington Heights* framework relies entirely on the legislative history of the UAA—a law that was enacted long before the criminalization of the acts for which defendant has been charged: attempted illegal entry. As the Government correctly points out, there were two key subsequent enactments: The Immigration and Nationality Act of 1952 (the "INA"), and the Immigration Act of 1990.[1]  *Girarte-Alcala* Opp. at 13-14. Defendant's failure to

---

[1] The Government argues that by tethering of Section 1325 to the legislative history of the UAA which did not criminalize "attempted illegal entry," defendant asks the Court "to adjudicate the constitutionality of a crime which is not even charged." *Girarte-Alcala* Opp. at 14. The Court declines to address this assertion and limits its analysis to the constitutionality of Section 1325(a)(1), the charging statute in the present case.

acknowledge, let alone examine, the legislative history of these more recent enactments is fatal to his arguments on the constitutionality of Section 1325(a)(1).

Defendant asserts that his analysis under the UAA is appropriate considering two recent Supreme Court cases: *Ramos*, 140 S. Ct. 1390, and *Espinoza*, 140 S. Ct. 2246. In *Ramos*, the issue before the Supreme Court was whether state laws allowing non-unanimous jury verdicts in criminal trials were constitutional. *Ramos*, at 1392. While the holding in *Ramos* was based primarily on an analysis of common law rights to a unanimous jury, the Court noted at the outset that the state laws at issue were rooted in racism. *Id*. In his dissenting opinion, Justice Alito disagreed with any reference to the discriminatory origins of the law, stating that the reasons why the laws were originally adopted were not relevant to the question of their constitutionality, particularly since they were later reenacted for ostensibly non-discriminatory reasons. *Id*. at 1426 (Alito, J., dissenting). In response, the Court's majority explained that consideration of the reasons for adoption of the state laws at issue was part of the Court's "functional analysis" as required by the Sixth Amendment. *See id*. at 1401 n.44. The majority confirmed that the state laws at issue would be unconstitutional even if enacted for solely benign reasons. *Id*.

The Supreme Court soon after issued its opinion in *Espinoza*, holding that a government program which provided tuition assistance to private schools, but expressly excluded religious schools, violated the Free Exercise Clause of the Constitution. *Espinoza*, 140 S. Ct. at 2261. In a concurring opinion that was not joined by any other justices, Justice Alito argued that *Ramos* set a precedent that requires the Court to examine the original motivation behind the exclusion of religious schools from the program, which was based on anti-Catholic sentiment. *Id*. at 2271 (Alito, J., concurring). Justice Sotomayor addressed Justice Alito's argument in her dissent, noting that even a law with an "uncomfortable past" is not automatically invalidated by its discriminatory origins. *Id*. at 2294 n.2 (Sotomayor, J., dissenting) (internal quotation marks omitted).

In sum, these cases do not support defendant's contention that *Ramos* and *Espinoza* *require* courts to examine the racial motivations of a law at the time of its passage, or that

later reenactments do not cleanse the law of its original taint. *Girarte-Alcala* MTD at 19. There is nothing in the record that offers support for defendant's suggestion that Section 1325(a)(1) should be judged according to the legislative history of the UAA. Moreover, defendant has not attempted to argue that Section 1325(a)(1) would be unconstitutional under an *Arlington Heights* analysis of more current and relevant legislative history pertaining to immigration enactments. Accordingly, the Court does not find that Section 1325(a)(1) is "presumptively unconstitutional" under *Arlington Heights, supra*.

### B. *Defendant's Prosecution for Attempted Illegal Entry of an Alien Under Section 1325(a)(1) Does Not Violate the Equal Protection Clause.*

Defendant further asserts that courts have applied the standard set forth in *Arlington Heights* to invalidate facially neutral laws enacted with a discriminatory intent that have disparately impacted different racial groups. In support, defendant states that "[c]ourts apply strict scrutiny to laws that are 'motivated by a racial purpose or object' under *Arlington Heights*." *Girarte-Alcala* MTD at 11, n.3 (citing *Hunt v. Cromartie*, 526 U.S. 541, 546 (1999)). Yet, while Congress has "sweeping power over immigration matters," *United States v. Hernandez-Guerrero*, 147 F.3d 1075, 1076 (9th Cir. 1998), this Court's review of immigration laws such as Section 1325(a)(1) is "subject to the lowest level of judicial review." *United States v. Lopez-Flores*, 63 F.3d 1468, 1475 (9th Cir. 1995) (addressing equal protection clause challenge to Hostage Taking Act, which classifies offenders and victims based on alienage); *see also United States v. Ruiz-Chairez*, 493 F.3d 1089, 1091 (9th Cir. 2007) (applying rational basis review to sentencing guidelines that provide enhanced punishment for illegal immigrants); *see also Hamad v. Gates*, 732 F.3d 990, 1005 (9th Cir. 2013) ("[W]e review alienage classifications drawn by Congress under a rational basis test.").

This Court is required to apply the rational basis test to Section 1325(a)(1), and finds it is readily satisfied in this case. The Ninth Circuit has already found that a similar felony statute, 8 U.S.C. § 1326, satisfies rational basis because it "'is a regulatory statute enacted to assist in the control of unlawful immigration by aliens.'" *Hernandez-Guerrero*, 147 F.3d

at 1078 (quoting *Pena-Cabanillas v. United States*, 394 F.2d 785, 788 (9th Cir. 1968)). The Court finds that Section 1325(a)(1) serves the same purpose, namely the deterrence of illegal immigration. Any disparate impact Section 1325(a)(1) may have on individuals of Mexican and Latin dissent is more readily explained by the geographic proximity of the United States/Mexico border, rather than racial animus. *See Dep't. of Homeland Security v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891, 1915-16 (2020) (noting that "virtually any generally applicable immigration policy could be challenged on equal protection grounds" if evidence showing Latinos "make up a large share of the unauthorized alien population" was enough to state a claim) (plurality). In sum, disparate impact alone, absent further evidence of discriminatory purpose, is insufficient to demonstrate an equal protection violation. *Washington v. Davis*, 426 U.S. 229, 242 (1976); *see also*, *e.g.*, *Chinatown Neighborhood Ass'n v. Harris*, 33 F. Supp. 3d 1085, 1096 (N.D. Cal. 2014). Accordingly, *Arlington Heights* does not require the Court to invalidate Section 1325 on the basis of disparate impact.

## ORDER

For the reasons outlined above, defendant's supplemental Motion to Dismiss is **DENIED**.

**IT IS SO ORDERED.**

Dated:  December 9, 2020

Hon. Karen S. Crawford
United States Magistrate Judge