# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　Plaintiff,<br><br>　v.<br><br>RIGOBERTO CAMPOS-ATRISCO,<br><br>　　　　　　　Defendant. | Case No. 19-mj-024683-KSC-BAS-1<br><br>**ORDER DENYING APPEAL FROM MAGISTRATE JUDGE DECISION AND AFFIRMING DEFENDANT'S CONVICTION AND SENTENCE (ECF No. 55)** |

After a bench trial, a Magistrate Judge found Defendant Rigoberto Campos-Atrisco guilty of misdemeanor attempted illegal entry in violation of Title 8, United States Code, § 1325(a)(1). The Magistrate Judge sentenced Defendant immediately upon conviction to a time served sentence. Defendant now appeals his conviction. For the reasons stated below, the Court **AFFIRMS** the conviction.

I.　**STATEMENT OF FACTS**

At 6:44 am, Border Patrol Agent Jorge Medina saw three people moving north through heavy vegetation about one-half mile north of the U.S. Border and 20 miles east of the nearest Port of Entry. (Trial Transcript ("Trial Tr.") 10, 13, ECF No. 62.) Agent Medina radioed Agent Zamora who began tracking the three individuals. (*Id.* 14.)

Agent Zamora noticed the shoe prints had no markings on the bottom, which indicated to him that the individuals were hiding their prints. (Trial Tr. 26–27.) In Agent Zamora's experience, this occurs when people are wearing "booties"—cloth or carpet wrapped around their feet in order to obscure footprints. (*Id.*)

After tracking the individuals for approximately three hours, Agent Zamora caught up with them about two to two-and-a-half miles north of the border and still about 20 miles east of any Port of Entry. (Trial Tr. 27, 31.) The area is isolated, full of brush and rocks and not near any hiking trails or houses. (*Id.* 25.) Agent Zamora has encountered numerous undocumented individuals in this area. (*Id.*) He knows it to be a main route for those illegally entering the United States. (*Id.*)

Agent Zamora located Defendant hiding behind rocks. (Trial Tr. 31.) Defendant was crouched behind the rocks avoiding eye contact. (*Id.* 32.) Defendant had booties over his shoes. (*Id.* 34–35, Ex. 2.)

Agent Zamora identified himself as a Border Patrol Agent and asked Defendant both in English and Spanish for his citizenship. (Trial Tr. 32–33.) Defendant responded "Mexico." (*Id.*) Agent Zamora asked Defendant if he had any documentation or legal right to be in the United States to which Defendant replied "no." (*Id.* 33, 47–48.)

Defense on cross-exam confirmed that Agent Zamora had not asked Defendant if he was also a citizen of the United States. Defense counsel also confirmed that an individual could be a dual citizen of both countries. (Trial Tr. 36–37.) The Government then on redirect, over defense objection, elicited that Defendant had only said he was a citizen of Mexico and had not volunteered that he was a citizen of any other country. (*Id.* 44, 47–49.)

In issuing a ruling in this case, the Magistrate Judge added that although defense counsel argued Defendant could be a United States citizen and still not have his name in the government databases:

> There was no evidence presented in this case to show that the Defendant in this matter is a United States citizen. Instead, the overwhelming evidence presented shows that he had not previously applied for status in the United States, and review of the C.I.S. and CDC databases don't support any suggestion that he is a United States citizen.

(Trial Tr. 120.)

## II. ANALYSIS

Defendant raises four issues on appeal. First, he argues that the Government committed *Doyle* error when it elicited information Defendant did not say in response to the questions of Agent Zamora. Second, defense argues that the Magistrate Judge shifted the burden of proof and required Defendant to prove he was not a United States citizen. Third, defense argues the Government failed to provide evidence that Defendant knew he was not a United States citizen, an element required because Defendant was convicted of attempted illegal entry. And, finally, defense argues Defendant's conviction violates the Equal Protection Clause. The Court addresses each issue in turn.

### A. Standard of Review

"A defendant may appeal a magistrate judge's judgment of conviction or sentence to a district judge within 14 days of its entry." Fed. R. Crim. P. 58(g)(2)(B); *see also* 18 U.S.C. § 3402. "The defendant is not entitled to a trial de novo by a district judge." Fed. R. Crim. P. 58(g)(2)(D). Rather, the appeal's scope "is the same as in an appeal to the court of appeals from a judgment entered by a district judge." *Id.* Final judgment was entered on April 13, 2021. (ECF No. 46). Defendant filed his Notice of Appeal on April 16, 2021. (ECF No. 55.) Thus, his appeal is timely. Fed. R. Crim. P. 58(g)(2)(B).

### B. *Doyle* Error

The court reviews *de novo* a claim that comments on a defendant's silence violated his Fifth Amendment privilege against self-incrimination. *United States v.*

*Busyhead*, 270 F.3d 905, 911 (9th Cir. 2001). If the court finds there was such a violation, it applies a harmless error review. *Id.* "A constitutional error may be disregarded only if it is harmless beyond a reasonable doubt." *Id.*

Defendant argues that the Government should not have elicited testimony about what Defendant did not say to Agent Zamora when Defendant said he was a citizen of Mexico. Specifically, the prosecutor elicited that Defendant had not said he was a citizen of any country other than Mexico. Defendant argues this constitutes a comment on Defendant's right to remain silent in violation of *Doyle v. Ohio*. In *Doyle v. Ohio*, 426 U.S. 610 (1976), the Supreme Court held that a prosecutor may not impeach a defendant's exculpatory story, told for the first time at trial, by cross-examining the defendant about his failure to have told the story post-arrest, after he was advised of and invoked his right to remain silent. *Id.*

As a preliminary matter, this Court finds that the initial questioning by Agent Zamora was a *Terry* stop and Defendant was not in custody at the time. *See United States v. Brignoni-Ponce*, 422 U.S. 873 (1975) (providing when an officer's observations lead him to reasonably suspect that a particular individual may be illegally in the United States, he may stop the individual briefly and investigate the circumstances that provoked suspicion, but the stop and inquiry must be reasonably related in scope to the justification for that initiation); *United States v. Medina-Villa*, 567 F.3d 507 (9th Cir. 2009) ("[W]hen border patrol agents stop a car based on reasonable suspicion that individuals are illegally present in the country and question the occupants regarding their citizenship and immigration status, the occupants are not in custody for *Miranda* purposes."). At the time Agent Zamora stopped Defendant, he had been tracking him for three hours, travelling north, just north of the border, in an isolated area two miles from any Port of Entry. Agent Zamora had encountered numerous undocumented individuals in the area. When Agent Zamora approached Defendant, he was hiding crouched behind rocks avoiding eye contact. He had "booties" obscuring his footprints. Thus, Agent Zamora had reasonable

suspicion to stop him and ask the two questions he asked: what country are you a citizen of, and do you have any documentation or legal right to be in the United States?

Because the questions were pre-arrest and pre-*Miranda*, the rule espoused in *Doyle v. Ohio* is not implicated. *See United States v. Beckman*, 298 F.3d 788, 795 (9th Cir. 2002) (citing *United States v. Oplinger*, 150 F.3d 1061 (9th Cir. 1998), *overruled on other grounds by United States v. Contreras*, 593 F.3d 1135 (9th Cir. 2010)) ("The use of a defendant's pre-arrest, pre-*Miranda* silence is permissible as impeachment evidence and as evidence of substantive guilt."). Contrary to Defendant's arguments, this exception was not overruled by *United States v. Velarde-Gomez*, 269 F.3d 1023 (9th Cir. 2001). *Velarde-Gomez* involved a defendant's post-arrest, but pre-*Miranda*, silence. The Ninth Circuit held that once the Government places an individual in custody, that individual has the right to remain silent in the face of government questioning, regardless of whether *Miranda* warnings are given. *Id.* at 1029. However, implicit in the ruling is the conclusion that the defendant was in custody. In this case, as discussed above, Defendant was not in custody at the time he was being questioned.

Finally, and perhaps most importantly, Defendant in this case did not exercise his right to remain silent at the time of this questioning. He answered the questions. *See United States Ramirez-Estrada*, 749 F.3d 1129, 1134 (9th Cir. 2014) (providing a defendant must have invoked his right to remain silent to trigger *Doyle*).

Since Defendant was not in custody at the time he was questioned and since he did not invoke his right to remain silent at the time of the initial questioning, no Fifth Amendment privilege was violated. Furthermore, any violation would have been harmless error. At the time he was questioned, Defendant admitted he did not have any documentation or legal right to be in the United States. Implicit in this admission is Defendant's admission that he was not a United States citizen.

Therefore, eliciting that Defendant did not say he was a United States citizen was harmless error.

### C. Shifting Burden of Proof

Defendant argues that the Magistrate Judge shifted the burden of proof requiring that Defendant prove he was not a United States citizen. However, looking at the Magistrate Judge's conclusions in toto, Defendant's argument is not supported by the record. The Magistrate Judge concluded the Government had met its burden of proof beyond a reasonable doubt because it had shown that: (1) upon apprehension Defendant said he was a citizen of Mexico; (2) he was located 20 miles east of the Tecate Port of Entry and two miles north of the U.S.-Mexico border; (3) he was wearing "booties"—items used to avoid detection by individuals going across the border; (4) he admitted he had no immigration documents that would allow him to enter or remain in the United States illegally; (5) he admitted he had entered the United States illegally the day before apprehension; (6) he was travelling not on a path or a road but on rough terrain as someone might do to avoid detection; and (7) he hid from agents when he was apprehended. (Trial Tr. 117–20.)

Because defense counsel had argued in closing argument that Defendant could have been a United States citizen or a dual citizen of the United States and Mexico, the Magistrate Judge responded that

> There was no evidence presented in this case to show that the Defendant in this matter is a United States citizen. Instead, the overwhelming evidence presented shows that he had not previously applied for status in the United States, and review of the C.I.S. and CDC databases don't support any suggestion that he is a United States citizen.

(Trial Tr. 120.) This was not shifting the burden of proof and, in fact, the Magistrate Judge followed this statement up with the conclusion that "[f]or these reasons, the Court does find that the Government has met its burden of proof." (*Id.*) Thus, the transcript does not support defense counsel's argument that the Magistrate Judge improperly shifted the burden of proof during the trial.

### D. Knowledge of Alienage Is Not an Element of Section 1325

In order to prove that a defendant attempted to illegally enter the United States, the Government was required to prove: (1) that the defendant had the purpose, that is the conscious desire to enter the United States at a time or place other than as designated by immigration officers; (2) that defendant committed an overt act that was a substantial step toward entering the United States other than as designated by immigration officers; and (3) at the time he did so, he was not a citizen of the United States. *See United States v. Gracidas-Ulibarry*, 231 F.3d 1188, 1196 (9th Cir. 2000).

Defense counsel argues that, because an individual convicted of an attempt must intend to commit every element of the completed crime (*see United States v. Dominguez*, 954 F.3d 1251 (9th Cir. 2020)), the Government must also prove that Defendant knew he was an alien at the time of the offense. However, even the completed crime does not require that the trier of fact find the defendant knew he was an alien at the time of the offense. An alien who enters the United States at a time and place other than that designated by immigration officers is guilty of illegal entry, whether or not he knows he is an alien at the time of the offense.

Defense counsel points to the recent Supreme Court decision in *United States v. Rehaif*, 139 S. Ct. 2191 (2019). However, *Rehaif* concerned the scope of the word "knowingly" in the context of a prosecution under 18 U.S.C. §§ 922(g) and 924(a)(2). Contrary to those statutes, Congress did not incorporate the word "knowingly" into Section 1325.

Furthermore, the Court in *Rehaif* was particularly concerned that failure to incorporate a scienter requirement would result in prosecution of innocent conduct. No such concern exists here. By admitting that he was not a citizen or national and was sneaking across the border, Defendant admitted conduct that was not innocent conduct. *Rehaif* is distinguishable, and there is no requirement that the Government prove a defendant knew he was an alien at the time he attempted to enter the United States at a place not designated by immigration officers.

Furthermore, there was ample evidence in this case to support the fact that Defendant knew he was an alien at the time he entered the United States illegally. He covered his shoes with "booties" to elude inspection by Immigration Officers. He crossed the United States 20 miles from the nearest Port of Entry in rough terrain not easily accessible to those who thought they could cross legally. When the Border Patrol Agent approached Defendant, he crouched behind a rock and avoided eye contact. And, when the Border Patrol Agent asked Defendant if he had any documentation or legal right to be in the United States, he said he did not. All of this supports the fact that Defendant knew he was not a United States citizen at the time he came across the border.

### E.   Equal Protection and Due Process

Defense argues both that Defendant's conviction violates the Constitution because of its discriminatory past and because he was treated differently than other defendants in CVB court. The Court finds both arguments unavailing.

First, defense counsel maintains that the law criminalizing illegal entry into the United States was created with discriminatory purpose and has disparately impacted Mexican defendants and, therefore, this Court should find it to be unconstitutional under *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 266 (1977). This argument was rejected in a well-reasoned opinion by another judge in this district. *See United States v. Rios-Montano*, No. 19-cr-2123-GPC, 2020 WL 7226441 (S.D. Cal. Dec. 8, 2020). This Court adopts the reasoning of that opinion and similarly rejects defense counsel's argument. Defendant in this case was not convicted of violating the 1929 immigration laws. Those laws were revised in 1952, and the current crime this Defendant was charged with—attempted illegal entry—was not added until the Immigration Act of 1990 was passed. *See* Pub. L. No. 1010-649, § 543(b)(2), 104 Stat. 5059. Thus, the Court looks to the intent of Congress in passing the more recent iterations of the Immigration Act rather than the intent of previous Congresses. The Court agrees

with *Rios-Montano* that "the legislative history for the 1990 legislation does not reveal any discriminatory motive." *Id.* at *7.

Additionally, "although Latinx people are likely disproportionally affected by Section 1325, the disparate impact alone . . . is not stark enough to show discriminatory motive, given that the disparity is explainable on grounds other than race." *Id.* at *8. The proximity of Mexico and Central American countries to the United States, the ability to come to the United States on foot rather than the need for a ship or plane, and the fact that a disproportionate number of individuals from these countries are coming to the United States because of political and economic situations in their own countries help to explain the disparate impact.

Therefore, for all of the reasons stated in *Rios-Montano*, the Court denies Defendant's constitutional challenge based on *Arlington Heights*.

Finally, Defendant argues that his conviction violates equal protection because he was treated differently than defendants arrested for misdemeanors or infractions on federal property who are processed through CVB court. This argument has been squarely rejected by the Ninth Circuit in *United States v. Ayala-Bello*, 995 F.3d 710 (9th Cir. 2021). Therefore, this Court denies the appeal on this ground.

## III.  CONCLUSION

For the reasons stated above, the Court **AFFIRMS** Defendant's conviction for a misdemeanor violation of Title 8, United States Code, § 1325(a)(1) attempted illegal entry into the United States. Defendant's Appeal (ECF No. 55) is therefore **DENIED**.

IT IS SO ORDERED.

DATED: November 16, 2021

Hon. Cynthia Bashant
United States District Judge